CITY OF BOSTON *vs.* JOHN GRAY & others.

Suffolk. Nov. 10, 1886. — Feb. 25, 1887. HOLMES & GARDNER, JJ., absent.

The basement of a building in a city extended under the sidewalk of the street on which the building abutted, and was lighted by a "Hyatt light," the iron frame of which was set in and formed part of the sidewalk. The first story and basement of the building were occupied under a lease of "the store and cellar under the same," containing the covenants that the lessees would keep the premises in repair, "but the lessees are not bound to repair the roof," and that the lessor might enter to view the premises, or to make repairs if he should elect to do so. The upper stories of the building were occupied by another tenant under a lease, containing the covenant that the lessee should make "all repairs on the demised premises." A traveller on the sidewalk was injured by falling thereon, solely because the iron frame of said light had worn smooth and slippery from long use, and recovered judgment against the city, which the city paid. *Held*, that the owner of the building was not liable to the city.

TORT. The case was submitted to the Superior Court, and, after judgment for the defendants, to this court, on appeal, upon agreed facts, in substance as follows:

One Mary A. McGuire recovered judgment against the city of Boston for $775.77 damages, and $36.60 costs, for an injury received by her by falling on the sidewalk in the highway in front and a part of the estate No. 66 Hanover Street, in Boston.

The sole cause of the injury was the smoothness and slipperiness of the iron frame of a Hyatt light, which formed a part of said sidewalk. At the time of the accident, the defendants owned said light and the fee of the sidewalk of said estate, on which was a brick building several stories high with a basement cellar. Said basement lawfully extended under the sidewalk, and was lighted solely by the Hyatt light. The space directly under the light was a suitable place for storing boxes, &c., and has been used, by the tenants hereafter mentioned, for that purpose; and beyond that space, and extending towards the road-bed, was the bin in which they kept their coal.

The ground floor and this basement were, at the time of the accident, occupied by the firm of William G. Harris and Sons, under a lease from the defendants of " the store and cellar under the same," containing the covenants that the lessees would keep the premises in repair, " but the lessees are not bound to repair the roof," and that the lessors might enter to view the premises, or to make repairs if they should elect so to do.

When the building was erected, it was constructed so that the other rooms, above the ground floor, should be occupied in connection with a hotel called the American House, and, at the time of this accident, they were so occupied by the owner of the American House, who was holding over under a lease from the defendants, containing the covenant that the lessee should make " all repairs on the demised premises."

The entrance of the American House was on the adjoining estate, which was not owned by the defendants, and there were no means of access, unless by the windows, into any part of the defendants' building above the ground floor except through the parts of the American House which were not owned by the defendants, the only out-door entrances to the defendants' building being the entrance into Harris's store from the sidewalk where the accident occurred, and a rear entrance to that store from a passageway leading from Portland Street.

Due notice of McGuire's suit and summons to defend it were given by the city to these defendants, and they declined to defend it. The judgment and costs were paid by the city.

The defendants contend that, on the above facts, the only remedy of the city, if any, is against the tenants; but they also

contend that the city alone was responsible for the defect; or that, if the owners or tenants were responsible at all, their liability was joint with the city's, and therefore that the city, being a joint wrongdoer, cannot recover of either owner or tenant.

It is admitted, subject to the plaintiff's objection, that this iron frame was a proper material to be used in the construction of a sidewalk, though more perishable than some materials commonly used for that purpose; that it had been properly made and placed; and that the accident happened simply because the iron wore smooth and slippery by long use.

If, upon the above statement, the court was of opinion that the defendants were liable, judgment was to be entered for the plaintiff; otherwise, for the defendants.

*R. W. Nason,* (*A. J. Bailey* with him,) for the plaintiff.

*R. H. Gardiner,* for the defendants.

W. ALLEN, J. The plaintiff relies upon two grounds to take this case out of the rule that the occupier of premises, and not the landlord, is under obligation to keep them in repair so as to be safe for the public. See *Lowell* v. *Spaulding,* 4 Cush. 277; *Stewart* v. *Putnam,* 127 Mass. 403.

It is contended that the excavation under the sidewalk was the nuisance, put there by the landlords and let by them to the tenants to be used by them. But the case finds that the excavation was properly there, and that its covering was properly made and placed and of proper materials, and that the accident happened because it had worn smooth and slippery from long use. The nuisance, then, consisted in the condition of the surface of the covering which formed part of the sidewalk; and it is not contended that it was in the same condition when the premises went from the occupation of the landlords into that of the tenants, if that would be material. In both of the cases cited above, it was held that a landlord was not under obligation to see that excavations in sidewalks, made by him and covered when let, were kept covered. In *Larue* v. *Farren Hotel Co.* 116 Mass. 67, the opening in the sidewalk was made and left uncovered by the landlord, and he was held to be liable, but whether for that reason, or because he retained the general control and supervision of the premises, and the obligation to keep them in repair, does not distinctly appear.

It is also contended that the occupation of the tenants, and their obligation to keep in repair, did not extend to the part of the premises, the Hyatt light, which was defective; that the landlords retained the control of that, and were therefore under obligation to keep it in repair. We think that the lease of the store and basement included the excavation under the sidewalk, and its covering; and that the tenants' covenant to keep in repair applied to it, and is not affected in regard to it by the provision that the lessees shall not be bound to repair the roof, nor by their covenant that the lessors may enter to view the premises, and make repairs if they elect so to do.

The fact that the upper part of the building was let to another tenant, who covenanted to keep it in repair (not excepting the roof), does not seem to be material.          *Judgment affirmed.*