Green *v.* Rabinowitz, Appellant.

Argued November 14, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Michael A. Foley,* for appellants.

*Herbert Somerson,* for appellee.

OPINION PER CURIAM, January 2, 1962:

On February 20, 1958, the plaintiff William Green slipped on an icy sidewalk in front of premises owned by Abraham Rabinowitz and Sarah R. Rabinowitz at the southeast corner of Fairmount Avenue and Eleventh Street, Philadelphia, and sustained serious injuries. He brought an action in trespass against Mr. and Mrs. Rabinowitz and the City of Philadelphia. At the ensuing trial a nonsuit was entered as to Mrs. Rabinowitz since she had died prior to the trial. The jury returned a verdict in the sum of $20,500 in favor of the plaintiff against Abraham Rabinowitz and exonerated the City of Philadelphia from all liability. The defendant moved for judgment n.o.v. and a new trial. The trial court refused both motions and the defendant appealed.

The defendant contends that the plaintiff did not prove any negligence on his part and that the charge of the court was prejudicial to him.

The plaintiff testified that on the night of the accident at about 7 o'clock he was walking east on the south side of Fairmount Avenue and that when he reached a point about 30 feet from the curb line his feet struck something and he fell. A later examination revealed that he had fallen because of lumps and ridges of ice underfoot. The sidewalk over which he had traveled before he reached the point of the fall was icy but not broken by lumps or ridges. The ridges where he fell measured from 4-1/2 to 5 inches in height. Other witnesses confirmed the plaintiff's testimony with regard to the presence of the ridges of ice and snow.

As previously stated, the accident occurred on February 20th. On February 15th and 16th there was a total snowfall of thirteen inches. The lower court stated in its opinion: "The United States Department of Commerce, Weather Bureau Report of February, 1958, for Philadelphia (International Airport), establishes that on none of the dates between February 15 and 20, 1958, did the temperature rise in average above 28 degrees Fahrenheit. Except for a high temperature on February 15, 1958 of 34 degrees and on February 20, 1958 of 33 degrees, there were no temperature readings above the Fahrenheit freezing point of 32 degrees during the period in question. Accordingly, it may be reasonably inferred that the snow and ice condition of defendant's sidewalk at the time of the accident, existed since the snowfall ended, during the afternoon of February 16, 1958. Also, it may be reasonably inferred as a result of the temperatures during the period in question that no appreciable amount of snow and ice disappearance occurred as a result of melting."

Did the defendant owner have knowledge of the condition of the sidewalk in front of his property? He resided one block away from the site of the accident. Since he was ill at the time of the trial, his son, by agreement between opposing counsel, testified in cross-

examination by the plaintiff, in his father's stead. The cross-examination brought forth the following: "Q. Your father stated when giving depositions that he passed the premises a week before the date of the accident and that he would pass there perhaps as often as once or twice daily. That is what your father said. It is agreed he said that under oath and I suppose you would not attempt to change your father's account of the passing of that place, would you? A. Well, it's possible because I am not there at all times. Q. It is quite likely what your father said is true? A. At that time, yes."

In view of this testimony, plus the fact that the defendant lived only a block away from the place where the lumps and ridges of ice had formed, it became a question of fact for the jury to determine whether the defendant had actual or constructive notice of the dangerous condition of the sidewalk in question. The jury found that he did have notice. The court below was justified in concluding: "Accordingly, the jury had sufficient evidence before it to find that the condition described by plaintiff and which caused this fall existed for some four days prior to the accident and that defendant, who resided and worked just one block from the site of the accident, had actual knowledge of the condition or constructive knowledge thereof due to the period of time which elapsed from the end of the heavy snowfall on February 16, 1958 to the date of the accident, February 20, 1958."

There is no basis in the case for judgment n.o.v.

Nor do we believe that the defendant is entitled to a new trial on his assertion that the court's charge was "grossly prejudicial to defendant and was fundamentally erroneous."

We have read the charge and are satisfied that it thoroughly correctly and fairly covered the issues submitted to the jury. The defendant points to individual

phrases which he claims prejudiced his case but in each instance the phrase referred to must be considered in the light of the immediately adjacent language and the charge taken as a whole. So read and so interpreted, it is clear that the defendant was not prejudiced by the charge and that, contrary to his contention, it was not "fundamentally erroneous". On the contrary, it was fundamentally correct and fair.

Judgment affirmed.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent and would enter judgment in favor of defendant non obstante veredicto. Plaintiff failed to prove that defendant had actual or constructive notice of the ridges.